## FRANK PATTERSON v. THE STATE.

1. The judicial officer, upon a return to a writ of *habeas corpus,* may compel the return of any warrant, order or document which he has reason to think exists, and may amend the return to such writ at any time before rendering his decision.
2. A return of facts which show a cause for detention will be sufficient if their truth or sufficiency are not questioned by the prisoner at the hearing.
3. A justice of the Supreme Court, sitting with a judge of the Court of Common Pleas, constitute a Court of Oyer and Terminer, although there is a vacancy in the number of Common Pleas judges in the county.
4. A defendant should not be discharged on *habeas corpus* because he has not been tried the second term after issue joined, under the provisions of section 65 of the act concerning criminal proceedings, unless it ap-

pears, first, that he has applied to the trial court and has been refused his discharge; and secondly, that such refusal was so arbitrary and groundless as to amount to a clear abuse of discretion.

On *certiorari.*

This writ brings up certain proceedings had before Justice Scudder, upon a return to a writ of *habeas corpus,* allowed upon the petition of Frank Patterson, who was in the custody of the sheriff of Monmouth county.    The petition set out that the cause or pretence of such confinement was because of a certain indictment for forgery presented by the grand jury of Monmouth county, of the term of October, 1884 ; that the said imprisonment was alleged to be illegal because the indictment was found by a grand jury which the sheriff did not cause to come before the Court of Oyer and Terminer and Jail Delivery, according to the statute, in that the said Oyer and Terminer was not legally constituted.    Also that the said indictment was found at the October Term of court, 1884, and that the defendant had been in confinement as aforesaid since January, 1885, and should be discharged because he was not tried at the term or session in which issue was joined, nor at the term thereafter, and no further time has been allowed for the trial thereof, for just cause.

Upon this petition a writ was allowed, to which the sheriff made return that the said Patterson was restrained of his liberty by virtue of certain indictments found in the Monmouth county Oyer and Terminer,          Term, 1884, and also that the said Frank Patterson was duly surrendered to the sheriff by one of his bail, December 28th, 1884 ; and also by certain indictments found at the January Term, 1885, of the Monmouth county Oyer and Terminer ; and also by certain orders of the Court of Quarter Sessions of the county of Monmouth, all of which would more fully appear in the proceedings of said Courts of Oyer and Terminer and Quarter Sessions, certified to by the clerk of the county of Monmouth and annexed to the return as a part thereof.

Then follows the certified copy of the record of the proceeding in the Court of Oyer and Terminer, as follows:

"October Term, 1884, the grand jury come into court and present the following bills and indictments: Frank Patterson, indictments for forgery, numbers from 81 to 114, inclusive.

"October 17th, 1884, it was ordered that all the indictments found this term be handed down to the Quarter Sessions.

"January Term, 1885, the grand jury presented seven more bills against Frank Patterson for forgery.

"January 19th, 1885, it was ordered that all indictments found this term be handed down to the Court of Quarter Sessions."

In the Quarter Sessions the record shows the following proceedings:

On October 23d, 1884, the defendant, being arraigned and charged, pleaded not guilty to each of the indictments found at the October Term, and entered into recognizance with two sureties for his appearance on November 17th, for which date the trial was set down.

On November 17th it was ordered by the court that the trial of the several indictments be postponed till November 19th, and on November 19th it was ordered that they be postponed until the next term of the court, and the defendant entered into recognizance with two sureties on each of the indictments for his appearance on the first Tuesday in January, 1885.

On March 3d, 1885, the petitioner was arraigned upon the indictments found at the January Term, 1885, and pleaded not guilty to each.

On March 5th it was ordered that all forgery indictments found October Term, 1884, be continued till May Term, and on May 13th it was ordered that all indictments standing against the petitioner be tried on the 27th of May, and that the defendant be remanded.

On May 20th it was ordered that all the indictments for forgery against the defendant be postponed until June 10th,

Patterson v. State.

1885, at ten o'clock A. M. On June 10th defendant was set at bar for trial for forgery of the Henry Krockle note, and the jury disagreed and were discharged, and the defendant was remanded.

On June 15th the same indictment was again tried, with the same result. On June 18th defendant was tried upon the indictment for forging the Uriah White note, with a similar result. On July 2d he was tried for forging the Buchanan note, which trial resulted in a conviction upon the first count. On July 13th he was tried upon another of the indictments, and convicted upon the fifth count. On July 29th he was tried upon another indictment, which trial resulted in a disagreement of the jury.

At this term the counsel for the defendant moved that the trial of all the indictments be had at that term or the defendant be discharged, but the court ordered that the trial of all indictments untried be continued until the next term, for good cause shown.

The judgments upon the two convictions were taken to the Supreme Court by writs of error, and the judgments were reversed at June Term, 1886. The writ of *habeas corpus* was tested June 28th, 1886.

Argued at November Term, 1886, before Justices REED, MAGIE and PARKER.

For the prosecutor, *R. T. Stout.*

For the state, *Charles Haight,* prosecutor of the pleas, and *J. W. Swartz.*

The opinion of the court was delivered by

REED, J. The first five reasons assigned for the reversal of the order below, remanding the prosecutor, are directed against the sufficiency of the return made by the sheriff in matter of form. I say in matter of form, because it cannot be insisted with any degree of plausibility, that if the facts set

out in the sheriff's return be true, the prosecutor was not properly in custody. The fact that he had been indicted, discharged on bail, surrendered by his surety, brought into court repeatedly for trial, and remanded to custody, all appear upon the face of the return, which includes the record of the proceedings of the Court of Oyer and Terminer and Quarter Sessions. The point of the objections is that these facts should appear more certainly, and in support of this view we are referred to section 15 of the Habeas Corpus act. The third subdivision requires that the person upon whom the writ of *habeas corpus* shall be served shall, in his return, if defendant be detained by any writ, warrant or other written authority, annex a copy thereof to said return, and the original shall be produced and exhibited on the return to the court or justice before whom the same is returned. This provision in another form is designed to secure the right of the defendant, first guaranteed by the fifth section of the Habeas Corpus act (31 *Car. II.*), to a copy of the warrant, commitment or detainer under which he is imprisoned. If the custodian neglects to return such warrant he can be ordered to do so by the judicial officer who issues the writ, and this order can be enforced by attachment. *Rev., p.* 470, § 18 ; *Church on Habeas Corpus,* § 124 ; *State* v. *Raborg,* 2 *South.* 545.

But the mere failure of such custodian to return a warrant, or the fact that his return is imperfect, does not operate to discharge the prisoner. The recognition of such a rule would place in the hands of negligent or corrupt jailers the power to empty a penitentiary.

Where the court or judge has reason to believe that a writ, order or record is in existence, which should be before the court or officer to enable complete justice to be done, the production of such paper can be compelled and the return amended. The court or justice, upon the return coming in, may examine, under oath, the officer or other person making such return, with respect to the subject matter thereof. *Rev., p.* 470, § 16.

According to the practice, both in England and this country,

the return can be amended at any time before the final disposition of the cause. *Hurd on Habeas Corpus* 262; *Matter of Hopson,* 40 *Barb.* 40; *Watson's Case,* 9 *Ad. & El.* 731 ; *People* v. *Cavanagh,* 2 *Park. Cr. R.* 658. And the return, when made, will be liberally construed. *Kay* v. *Bethel,* 5 *Mod.* 19; *People* v. *Nevins,* 1 *Hill* 154; *Brenan's Case,* 10 *Ad. & El.* (*N. S.*) 492.

In the present case it is urged upon the argument here that copies of the indictments should have been returned. For what purpose it is difficult to imagine. Not for the purpose of passing upon their sufficiency, for the court or justice upon *habeas corpus* does not sit to review errors. *Cooley Const. Lim., p.* 347. For the purpose of raising the question of the constitution of the Court of Oyer and Terminer, and of the grand jury which found them, their return in full was unnecessary, and this was the only question raised, by the petition or upon the hearing before the justice, so far as appears by the record. The same remark may be made in regard to the objection that there was no sufficient return of the surrender of the defendant by his surety. The fact of a surrender was not, so far as appears, controverted at any stage of the proceeding. Had it been controverted, and then had it been thought material by the justice to inquire if a rule was entered upon the surrender, and, if so, that a copy of the rule should be produced, then the alleged defect would have been proved to exist in fact, or else the return could have been perfected. The prisoner not having controverted the return as made, it must be presumed that the fact as stated by the sheriff is true.

In the case of *People, ex rel. Trainer,* v. *Baker,* 89 *N. Y.* 460, it was held that although a statute requires that after a criminal has been sentenced, a warrant of commitment shall be signed by the judge, yet if the petition for the writ contains no allegation that the defendant was detained without a warrant, and there is no order in the writ to send up the warrant, but only the cause of the imprisonment, a certified copy of the minutes of the court, showing the sentence imposed, will sufficiently show the cause of imprisonment.

But the statement of the existence of the indictments, and of the surrender, are only steps in a proceeding or series of proceedings of which the subsequent orders in the Court of Quarter Sessions, remanding the defendant into custody, are a part. These orders are set out in full in the record attached to the return as a part thereof. This is sufficient, at least until some intermediate step is attacked. *Church on Habeas Corpus*, § 190; *Watson's Case*, 9 *Ad. & El.* 731.

My conclusion is that the attack upon the form of the return now made cannot be recognized.

It is next insisted that the indictments against the petitioner were not found by a legally organized grand jury.

The line of argument by which this point is supported is the following: By a special act applying to Monmouth county the Court of Common Pleas was constituted, to consist of four judges; that there were only three appointed judges of the Court of Common Pleas, and therefore there was no such court; that therefore, in the language of the brief of the counsel for petitioner, the Court of Common Pleas cannot be a factor in the making up of the Court of Oyer and Terminer.

Upon the point that the Court of Common Pleas must consist of four judges we are referred to the case of State *v.* Patterson, decided in this court at June Term last. But a glance at the opinion in that case is only necessary to enable us to perceive that the court only decided that by the act of 1879 (*Pamph. L.*, *p.* 428) it required three judges to hold a session of such court. The defect in the proceeding reviewed in that case arose from the fact that in the face of this statute only two of the judges sat at the drawing of the jury. It was admitted that three judges could hold the court. The contention, then, that there was no legal Court of Common Pleas in existence falls to the ground. The notion that a failure to appoint a fourth judge destroys the legal constitution of the court for the transaction of business is entirely fallacious. In view of such a theory a vacancy in one of the positions filled by a justice of the Supreme Court would destroy the power of the court to conduct the legal business of the state.

If there was but a single judge of the Court of Common Pleas appointed, although he alone could not hold a session of the court, yet he, with a justice of the Supreme Court, could hold the Court of Oyer and Terminer. *Rev., p.* 271, § 26. So the existence of a legally constituted Court of Common Pleas is not now involved, but only the question whether there was a judge of the Court of Common Pleas with the justice of the Supreme Court in the Court of Oyer and Terminer. The answer to the objection upon this ground is so obvious, upon the merits, that it is unnecessary to examine how far an objection to the qualification of a judge to hold a court can be considered upon *habeas corpus.* The rule seems to be that the character of a *de facto* officer, so long as the court has jurisdiction over the person and subject matter of the adjudication, cannot be questioned upon this proceeding. *Church on Habeas Corpus,* §§ 356, 357, 369.

It is next insisted that the petitioner was entitled to his discharge because his trials were unreasonably delayed. The counsel for the petitioner places himself upon the provision of our state constitution, that in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial, by an impartial jury; and also upon the sixty-fifth section of the act concerning criminal proceedings. This section provides that every indictment shall be tried the term or session in which issue is joined, or the term after, unless the court, for just cause, shall allow further time for the trial thereof, and if such indictment be not so tried as aforesaid, the defendant shall be discharged.

This clause, first enacted in 1799, seems to have superseded the provisions of the seventh section of the Habeas Corpus act of Charles II., first enacted in this state in 1795, and still in our Habeas Corpus act. *Rev., p.* 475, § 52 ; *State* v. *Garthwaite,* 3 *Zab.* 143.

The counsel for the petitioner properly presented the constitutional and statutory provisions together, for it cannot be doubted that the statute was drafted to effectuate the purpose which the constitutional clause was designed to secure. And

it seems evident, in the light of this legislation, that the rem-
edy of a defendant for an alleged violation of his constitutional
right lies, in the first instance, in the trial court. Indeed, the
existence of facts which will afford a just cause for the allow-
ance of further time is so peculiarly within the knowledge of
the trial court, that nowhere else can the exercise of the dis-
cretion be so intelligently discharged.

The injunction of the constitution, like every other right,
can only become efficient through the intervention of some
court, and the matter of speed rests so much upon the facility
or embarrassments which attend each prosecution, that aside
from the words of the statute, discretion in that court is abso-
lutely essential. Again, says Judge Cooley, it is required that
the trial shall be speedy ; and here also the injunction is ad-
dressed to the sense of justice and sound judgment of the court.
*Cooley Const. Lim., p.* 311.

It is, I imagine, because of the discretionary and conse-
quently unreviewable character of the orders of the courts in
granting or refusing discharges, applied for on the ground of
delay in prosecution, that there is so little judicial sentiment
expressed upon this constitutional guarantee. Those writers
upon criminal and constitutional law, who would be expected
to treat of the extent of the prisoner's right and the method
of securing it, have little to say upon the subject. Nor do the
writers upon the use of the writ of *habeas corpus* indicate any
opinion as to the propriety of its use to secure a discharge
solely upon the ground of a refusal of a trial court to dis-
charge because of a delay in prosecuting an indictment.

Its use seems to have been recognized in *Glover's Case,* 109
*Mass.* 340, where nothing was said on this head and the pris-
oner was remanded. On the other hand, where the statute
provided for an entire discharge from liability to answer again,
and not merely a discharge from imprisonment, it was held
that the court, on *habeas corpus,* would not review the action
of the trial court in refusing a discharge. *Ex parte McGehan,*
22 *Ohio St.* 442. The Colorado Supreme Court, in *In re
Gurney,* recently decided to discharge because the statute which

gave the right to a trial within a specified time was a part of the Habeas Corpus act.

While I am not prepared to say that no discharge would be ordered upon *habeas corpus*, on the ground that a trial court abused its discretion in refusing to discharge, yet I am clear that it must appear, first, that application was made to the trial court for a discharge upon this ground, and second, that there was an arbitrary and causeless refusal to do so, before a discharge would be ordered by the judicial officer hearing the matter upon return to the writ.

The trial court is controlled in its judicial action in this respect by the constitutional injunction, and will be presumed to have had in view the rights of the prisoner under it. It will be presumed that the court exercised the discretion in a proper judicial spirit, and that sufficient reasons were before the court to justify the delay. And even when all the facts which were before the trial court are reproduced before the judicial officer, it is not the province of the latter to review the exercise of discretion, but to ascertain if there was any ground upon which the trial court could have exercised a discretion at all as it did.

In the present case it does appear that an application was made to the Court of Quarter Sessions for a discharge, at May Term, 1885. It appears that the postponements were ordered for good cause. Nothing appears to show that there may not have been good cause. This, without further observation, would be an answer to the claim of the petitioner. But under the circumstances as they appear upon the record, it seems to me that the proceedings were reasonably expeditious, and the trial court, in refusing a discharge, was right.

The order of the justice remanding the prisoner is affirmed.