# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

STICHTENOTH v. CENTRAL STOCK & GRAIN EXCH. OF CHICAGO.

(Circuit Court, N. D. Illinois, N. D.   January 23, 1900.)

1. JURISDICTION—QUESTION—HOW RAISED.
   The question of jurisdiction may be considered on motion to dismiss, though a plea to the jurisdiction is the better practice.

2. SAME—ACTION FOR PENALTY.
   An action for treble the amount lost at gambling,—one half thereof to go to the person bringing the action, and the other half to the county,—authorized by 1 Starr & C. Ann. St. Ill. 1885, p. 792, c. 38, § 132, to be brought against the winner by any person in case the loser fails to sue for his losses, is for a penalty, and cannot be taken jurisdiction of by a federal court, though the money lost belonged to plaintiff, and had been surreptitiously taken by the loser.

Rufus S. Simmons, for plaintiff.
C. D. Fullen, for defendant.

JENKINS, Circuit Judge.   This cause comes on for hearing upon a motion by the defendant, before pleading, to dismiss the suit for want of jurisdiction here to entertain it.   The better practice is to present the objection by a plea to the jurisdiction; but since the federal court will at any stage of the case, when want of jurisdiction appears, decline to further proceed, irrespective of the manner in which the want of jurisdiction is disclosed, the question may be considered under the present motion.

This is a special action on the case brought by the plaintiff, who alleges herself to be the wife of one William Stichtenoth.   The amended declaration, in substance, after asserting the necessary diverse citizenship of the parties, alleges that prior to March 15, 1897, her husband took and misappropriated her money, without her knowledge or consent, to the amount of $20,660.63, and thereafter, and prior to that date, by "playing, betting, wagering, and gambling upon certain lots, chances, casualties, and unknown and contingent events, such as the rising and falling of market prices or alleged market prices, and speculating and dealing in futures and options in wheat, pork, shares of stock in certain corporations, and other property

99 F.—1

and commodities, with the defendant, without the intention on the part of either the said William Stichtenoth or the defendant of actually buying or selling or receiving or delivering, or engaging in any bona fide transaction of buying or selling, any products or commodities, did lose to the defendant, the Central Stock & Grain Exchange of Chicago," the said money of the plaintiff; that such moneys were so lost more than six months prior to suit, and her husband did not within six months of the loss sue to recover the money so by him lost and paid, and the defendant has not repaid the same to her said husband, whereby, as it is alleged, the plaintiff has become "entitled to recover from the defendant treble the value of the money so lost as aforesaid, according to the statutes of Illinois in such cases made and provided, from the defendant, who won and received said sums of money as aforesaid, wherefore the defendant has become indebted to the plaintiff in the sum of sixty-one thousand nine hundred and eighty-one dollars and eighty-nine cents, and costs of suit,—one-half to the use of the county of Cook, in the state of Illinois, and one-half to the use of the plaintiff. And the defendant, though requested so to do, has not paid said sums of money, or any part thereof, wherefore the plaintiff brings this her suit against the defendant for the said sum of sixty-one thousand nine hundred and eighty-one dollars and eighty-nine cents, and prays for judgment as aforesaid, and for her costs herein."

The Criminal Code of the state of Illinois provides as follows:

"Whoever contracts to have or give to himself or another the option to sell or buy, at a future time, any grain, or other commodity, stock of any railroad or other company, or gold, or forestalls the market by spreading false rumors to influence the price of commodities therein, or corners the market, or attempts to do so, in relation to any of such commodities, shall be fined not less than $10 nor more than $1,000, or confined in the county jail not exceeding one year, or both; and all contracts made in violation of this section shall be considered gambling contracts, and shall be void." 1 Starr & C. Ann. St. 1885, p. 791, c. 38, § 130. "Any person who shall, at any time or sitting, by playing at cards, dice or any other game or games, or by betting on the side or hands of such as do game, or by any wager or bet upon any race, fight, pastime, sport, lot, chance, casualty, election or unknown or contingent event whatever, lose to any person, so playing or betting, any sum of money, or other valuable thing, amounting in the whole to the sum of $10, and shall pay or deliver the same or any part thereof, the person so losing and paying or delivering the same, shall be at liberty to sue for and recover the money, goods or other valuable thing, so lost and paid or delivered, or any part thereof, or the full value of the same, by action of debt, replevin, assumpsit or trover, or proceeding in chancery, from the winner thereof, with costs, in any court of competent jurisdiction. In any such action at law it shall be sufficient for the plaintiff to declare generally as in actions of debt or assumpsit for money had and received by the defendant to the plaintiff's use, or as in actions of replevin or trover upon a supposed finding and the detaining or converting the property of the plaintiff to the use of the defendant, whereby an action hath accrued to the plaintiff according to the form of this act, without setting forth the special matter. In case the person who shall lose such money or other thing, as aforesaid, shall not within six months really and bona fide, and without covin or collusion, sue, and with effect prosecute, for such money or other thing, by him lost and paid or delivered, as aforesaid, it shall be lawful for any person to sue for, and recover treble the value of the money, goods, chattels and other things, with costs of suit, by special action on the case, against such winner aforesaid; one half to the use of the county, and the other to the person suing." Id. p. 792, c. 38, § 132.

It has been ruled by the supreme court of Illinois, in Pearce v. Foote, 113 Ill. 228, that transactions such as are stated in the amended declaration are within the prohibition of the statute, and the amount lost may be recovered. The question here presented, however, is this: Whether the federal court will entertain a suit, not by the original loser to recover his loss, but one brought under the statute by an informer, on behalf of herself and of the county of Cook, to recover treble the amount of the loss. The statute is clearly highly penal in its nature. The action is given, not to restore to the loser the money obtained from him in speculations denounced by the statute, but in the event, and only in the event, of the failure of the loser within six months to sue for a recovery of the money or property lost, any person (a total stranger to the loser and to the transaction) may recover treble the amount of the loss,—one half of the amount to go to him, and the other half to the county in which the transaction was had. Such a recovery is permitted against the winner by way of punishment for his violation of the statute, but the recovery in no part inures to the benefit of the loser. The statute assumes that a loser in such a transaction is not to be depended upon to seek restitution, and, that the winner may not escape without punishment, it provides that any person whatever may recover of the winner, with respect to a transaction in which he had no part or lot, treble the amount won and lost. One half of this amount goes to the informer, for his diligence and philanthropy in asserting the dignity of the state; the other half goes to the municipality within whose jurisdiction the violation of law was committed; but the entire amount is imposed as a fine or penalty upon the winner for his violation of law. I can conceive of no statute more thoroughly penal in its character, and, within the reasoning of the supreme court of the United States in Huntington v. Attrill, 146 U. S. 657, 13 Sup. Ct. 224, 36 L. Ed. 1123, I apprehend a federal court cannot take jurisdiction of such an action. The courts of the United States do not sit to punish offenders against the law of the state. The courts of a state have exclusive jurisdiction to punish all infractions of its criminal law.

But it is urged that as the plaintiff was the wife of the loser, and he had surreptitiously taken and lost her money in the speculative and forbidden transactions, therefore she has an interest which renders this statute, as to her, not penal, and brings the case within the definition stated by Mr. Justice Gray in Huntington v. Attrill, supra. It is there said:

"The question whether a statute of one state, which in some aspects may be called penal, is a penal law in the international sense, so that it cannot be enforced in the courts of another state, depends upon the question whether its purpose is to punish an offense against the public justice of the state, or to afford a private remedy to a person injured by the wrongful act."

Whether a statute be penal is not dependent upon the circumstances which surround the person who prosecutes under it. It depends, as stated by Mr. Justice Gray, upon the question whether the purpose of the statute is to punish an offender, or to afford a private remedy to the person injured. This action is brought under the stat-

ute referred to. It does not give a private remedy. It is not requisite to a recovery that the plaintiff in such an action should have any private interest whatever in the subject-matter complained of. It is brought, and can be brought, only upon failure of the loser to sue to recover his loss within the time specified. It is brought to recover treble the loss, which the statute permits as a punishment upon an offender against the law, and is brought by her as an informer, and in the interest of herself and of the municipality in which the offense was committed, as the statute directs. All that is alleged with respect to her ownership of the funds which her husband used and lost in speculation is mere surplusage, and in no sense adds to her right of recovery, which is otherwise complete. The allegations in that behalf have no place in this declaration. Whether outside of this statute she could recover, either at law or in equity, for her property wrongfully taken by her husband, and lost in speculation to the defendant, need not now be considered. Any suit therefore must proceed upon the ground that the title to the property had not passed, and that, tracing her money into the hands of the defendant, she can follow and recover it; but that is not this case. It is an action in the nature of a qui tam action, wherein a plaintiff is a mere volunteer, without interest in the subject-matter, to recover under this statute the treble amount of the loss which the law imposes upon an offender for the infraction of the law; and, to recover under such statute, the plaintiff must seek her remedy in the courts of the state whose law has been offended, and whose punishment is sought to be imposed. The suit will be dismissed for want of jurisdiction of the subject-matter.