STATE OF NEW JERSEY, THOMAS LEDBETTER, PROSECU-TOR, v. CHARLES WILSON, CHIEF OF POLICE OF THE CITY OF JERSEY CITY, ET AL., RESPONDENTS.

Submitted January 22, 1947—Decided April 7, 1947.

Before Justices Parker, Donges and Eastwood.

For the prosecutor, *Raymond Chasan.*

For the respondents, *Horace K. Roberson,* Prosecutor of the Pleas of the County of Hudson, and *William W. Wimmer,* First Assistant Prosecutor of the Pleas of the County of Hudson (*William P. Gannon,* Assistant Prosecutor of the Pleas of the County of Hudson, on the brief).

The opinion of the court was delivered by

Eastwood, J. *Certiorari* has been allowed to review the propriety of the action of the Court of Common Pleas of Hudson County, in discharging a writ of *habeas corpus* emanating from said court, on the petition of Thomas Ledbetter, the prosecutor herein. Factually, it appears that Ledbetter had been confined in the Hudson County penitentiary, at Secaucus, under a sentence of six months, imposed upon him on May 9th, 1946, following a conviction for an offense committed in this state. While so incarcerated, a detainer from the State of Georgia was lodged against Ledbetter with the Hudson County authorities, informing the authorities that Ledbetter had been convicted of burglary in the State of Georgia, and had been sentenced to imprisonment for a term of five years, in 1936, and had escaped from one of its penal institutions on February 9th, 1943, prior to the expiration of his sentence. In the *habeas corpus* proceedings, Ledbetter testified that he first learned that he was wanted in Georgia, on October 9th, 1946. He also testified that on November 4th, 1946, he was transferred from the Hudson County penitentiary, at Secaucus, to the Hudson County jail, in Jersey City. On November 4th, 1946, Ledbetter refused to sign a waiver of extradition and return to Georgia. Although the docket entries of the Hudson County Court of Common Pleas do not set forth the exact succession of events following November 4th, 1946, we are informed in respondents' brief, and it is not denied by the prosecutor herein, that on the same day, namely November 4th, 1946, Ledbetter was

brought before one of the judges of the Hudson County Pleas and informed that he had a right to a hearing on a writ of *habeas corpus*, and a right to counsel. The prisoner thereupon advised the court that he was represented by counsel, and the court allowed the prosecutor additional time, viz., until November 13th, 1946, within which his counsel could apply for a writ of *habeas corpus* to test the validity of his imprisonment, further stating that the hearing on the return could be had on the same day. On November 13th, 1946, Ledbetter was brought before the Pleas, but, it appearing that counsel for the prisoner was not in court, a representative of an organization interested in the prisoner's behalf requested an adjournment of the matter. There was no objection raised by the Prosecutor of the Pleas and the court thereupon fixed November 25th, 1946, as the date within which the prisoner's counsel could apply for a writ of *habeas corpus*, also stating, that the hearing on the return would be held on the same day. On November 25th, 1946, the prisoner was in court represented by counsel and a petition for a writ of *habeas corpus* was presented and allowed, returnable at 12:00 o'clock noon of the same day. The hearing, in the *habeas corpus* proceedings, was accordingly held, and resulted in a dismissal of the writ. *Certiorari* was allowed on November 29th, 1946, to review that action.

We are now asked to reverse the determination and order of the Hudson County Court of Common Pleas on two grounds: (1) that no return to the writ of *habeas corpus* was made as required by statute, and that, therefore, there was no justification made to appear to the Hudson County Common Pleas for the imprisonment and restraint of Ledbetter; and (2) that the restraint and imprisonment of Ledbetter were illegal, and the determination of the Hudson County Common Pleas in discharging the writ of *habeas corpus* was erroneous, in that the demand of the Governor of Georgia for the extradition of Ledbetter did not contain a statement by the executive authority of that state, that the person claimed had escaped from confinement, or had broken the term of his bail, probation or parole, as provided by the Uniform Extradition Law, *R. S.* 2:185–11.

Addressing our attention to ground (1) to the effect that the return to the writ of *habeas corpus* was improper, and not in compliance with the statutory provisions as set forth in *R. S.* 2:82–23, *et seq.*, which require that the custodial officer upon whom the writ of *habeas corpus* is served, shall return the same, setting forth plainly and unequivocally whether he has or has not the party in his power or custody, or under his restraint, and if he has, the authority and true cause of the imprisonment or restraint, setting forth the same at large; together with a copy of the writ, warrant, or other written authority, authorizing the detention annexed thereto. The return is to be signed by the person making it. It is conceded that the specific procedural elements governing the return as set forth in the statutory pronouncement were not literally complied with. However, it appears that at the time of the hearing on the writ, the prisoner was in court, represented by counsel, and made no objection whatsoever to the admission of the various extradition papers from the State of Georgia. We conclude that his failure so to do, and his participation in the hearing on the merits, precludes him from now, for the first time, raising such objection. In *Patterson* v. *State,* 49 *N. J. L.* 326; 8 *Atl. Rep.* 305, this court, speaking through Mr. Justice Reed, said:

"But the mere failure of such custodian to return a warrant, or the fact that his return is imperfect, does not operate to discharge the prisoner. The recognition of such a rule would place in the hands of negligent or corrupt jailers the power to empty a penitentiary.

"Where the court or judge has reason to believe that a writ, order or record is in existence, which should be before the court or officer to enable complete justice to be done, the production of such paper can be compelled and the return amended. The court or justice, upon the return coming in, may examine, under oath, the officer or other person making such return, with respect to the subject-matter thereof. *Rev.* 470, § 16.

"According to the practice, both in England and this country, the return can be amended at any time before the final

disposition of the cause. *Hurd on Habeas Corpus* 262; *Matter of Hopson,* 40 *Barb.* 40; *Watson's Case,* 9 *Ad. & El.* 731; *People* v. *Cavanagh,* 2 *Park. Cr. R.* 658. And the return, when made, will be liberally construed. *Kay* v. *Bethel,* 5 *Mod.* 19; *People* v. *Nevins,* 1 *Hill* 154; *Brenan's Case,* 10 *Ad. & El.* (*N. S.*) 492."

It is difficult to imagine in what manner a strict, formal return of a writ of *habeas corpus* by the custodial officer would have protected the rights of the prosecutor herein to any greater degree than that which resulted under the actual circumstances as they occurred. Ledbetter was in court, having been produced in response to the writ, exemplified copies of all the proceedings in the State of Georgia, representing the proposed extradition of Ledbetter, certified copies of the record of his conviction for burglary in Georgia, the record of his escape from the Dodge County Public Works Camp, a branch of the Georgia Penitentiary system, on August 27th, 1937, and his further escape from the Georgia penitentiary system on February 9th, 1943, an exemplified copy of the indictment on which Ledbetter was convicted, together with an exemplified copy of his record of conviction for burglary, containing a statement of his commitment thereon to the Georgia State penitentiary, and a state warrant issued by the State Department of Corrections to Mr. Joseph Buckley, warden, of the Hudson County penitentiary, Secaucus, New Jersey, requesting said warden to hold the prisoner, Ledbetter, pending extradition proceedings, all were offered and received in evidence, without objection. The issue before us is one of first impression, and the industry of counsel has failed to produce any adjudication of the courts of this state on the precise question before us. It is urged by the respondents, that the holding of the Superior Court of Pennsylvania, in *Commonwealth, ex rel. Zimbo* v. *Zoretskie et al.,* 124 *Pa. Super.* 154; 188 *Atl. Rep.* 365, is dispositive of this particular phase of the matter at bar. In that case, a writ of *habeas corpus* was allowed for the purpose of ascertaining who was entitled to the custody of a certain minor child. The law of Pennsylvania required that a formal return to the writ

be made. An erroneous return was made, although the child was produced at the hearing. No objection to the validity of the return was made, and the petitioner participated, without objection, in the hearing. With respect to the efficacy of the writ, the court ruled as follows:

"Appellant, by his present counsel—who was not present at the hearing—contends that his legal and constitutional rights were prejudiced by the sheriff's return and by the action of the judge in proceeding to hear the respondents and their witnesses without first requiring them to file a return; that he should have adjudged respondents in contempt and refused to permit them to be heard on the merits, until a return was filed.

"While it would have been better practice for the respondents to file a return, in addition to producing the body of the child, in strict accordance with the provisions of the Act of February 18th, 1785, 2 *Sm. L.* 275 (sections 1, 13 and 14 (12 *P. S.* §§ 1871, 1888, 1889)), we are of opinion that it was not such a defect as to render invalid the hearing on the merits, in view of the petitioner's failure to make any objections to the lack of a return or to the right of the respondents and their witnesses to be heard. * * * The object of the proceeding was the ascertainment of the facts, and after a full hearing on the merits we shall not reverse on such a technical point. * * * The erroneous return of the sheriff did the petitioner no harm."

We are in accord with the rule of construction of a return to a writ of *habeas corpus* as enunciated in *Patterson* v. *State,* and *Commonwealth, ex rel. Zimbo* v. *Zoretskie et al., supra.* We are unable to perceive that the constitutional rights of the prosecutor were in any way prejudiced by the procedure adopted in the *habeas corpus* proceedings.

It is urged by the prosecutor in his ground (2) for reversal above, that the extradition warrant and proceedings from the demanding State of Georgia are defective, in that they contain no statement by the executive authority of the demanding state to the effect that the person claimed has escaped from confinement, or has broken the terms of his bail, proba-

tion or parole. We deem this contention entirely specious. The examination of the Governor of Georgia's demand clearly reveals that he states: "It has been officially represented to me that Thomas Ledbetter stands charged in Chatham County, State of Georgia, with the offense of burglary;" and further asserts, that said Ledbetter is a fugitive from justice; that it has been represented to the Governor of Georgia that said fugitive from justice has fled from the justice of said state and has taken refuge in New Jersey. The various papers accompanying the demand of the Governor of Georgia, all set out, in detail, the indictment, conviction, commitment, and other facts pertinent to the matter. It seems obvious, and we so hold, that the demand for extradition contains the statement of the executive authority of the demanding state within the contemplation of *R. S.* 2:185–11.

It was sought by prosecutor's counsel, at the hearing on the writ of *habeas corpus,* to examine into the validity of the conviction of burglary of Ledbetter in Georgia. The learned Judge of the Pleas properly overruled and refused to permit the offer of such proof. It has been held many times that the courts of the asylum state of a person fleeing the state of his conviction for crime have no right to consider the merits of his trial, the question of his guilt or innocence, or whether his constitutional rights were violated in the proceedings leading to his conviction, but can consider only the question of the asylum state's obligation to surrender him to the state from which he fled. *Robichaud* v. *Brennan,* 134 *N. J. L.* 532; 49 *Atl. Rep.* (2*d*) 287; *Powell* v. *Meyer,* 134 *N. J. L.* 169; 46 *Atl. Rep.* (2*d*) 671; *In re Cotton,* 24 *N. J. Mis. R.* 267; 47 *Atl. Rep.* (2*d*) 830; *Ex parte Williams,* 101 *N. J. Eq.* 75; 137 *Atl. Rep.* 422; *Kentucky* v. *Dennison,* 24 *How.* (*U. S.*) 66; 16 *L. Ed.* 717; *Ex parte Reggel,* 114 *U. S.* 642; 29 *L. Ed.* 250; 5 *S. Ct.* 1148; *Ex parte Hubbard,* 201 *N. C.* 472; 160 *S. E. Rep.* 569.

We have considered all of the other reasons urged for reversal on behalf of the prosecutor and find them to be without merit.

The writ is discharged, with costs.