23 N.J. Super. 209 (1952)
92 A.2d 837
IN THE MATTER OF THE APPLICATION FOR WRIT OF HABEAS CORPUS OF ALEXANDER S. COHEN.
Superior Court of New Jersey, Appellate Division.
Argued October 27, 1952.
Decided November 12, 1952.
*212 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
*213 Mr. Edward Gaulkin argued the cause for the State of New Jersey (Mr. C. William Caruso, of counsel).
Mr. George R. Sommer argued the cause for the defendant.
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
The determinative question is whether the Essex County Court erred in denying the petitioner, in habeas corpus proceedings, the right to offer testimony to establish the motives and animus of the complaining witnesses whose testimony allegedly resulted in the criminal indictments returned against him in Massachusetts.
Cohen was indicted by the grand jury of Suffolk County, Massachusetts, for the alleged larceny of $2,100 from one Howard Eveleth and for obtaining by false pretense certain moneys of one Alfred J. Tomasi. The Governor of Massachusetts forwarded a requisition with accompanying papers to the Governor of New Jersey on March 11, 1952, requesting Cohen's arrest and return as a fugitive from justice. The requisition was honored by the Governor of New Jersey on March 19, 1952; a warrant of rendition was issued and duly executed on March 28, 1952. On the latter date the Honorable W. Stanley Naughright, Judge of the Essex County Court, allowed a writ of habeas corpus to test the validity of the extradition. At the hearings there was no dispute as to the question of the petitioner's identity, or that the charges in the indictments were crimes under the law of Massachusetts, or that petitioner was present in the demanding state on or about the times alleged in the indictments. The only question raised by Cohen before Judge Naughright, and the only question raised here is whether the court erroneously rejected certain evidence tending to show that the bases for the indictments were of a civil nature and that the purpose of the extradition was to secure Cohen's presence in Massachusetts to obtain service of civil process upon him and enforce the civil claims.
So far as the courts of New Jersey are concerned, the case is one of first impression. As we shall demonstrate, *214 there are numerous decisions in this State and other states which establish the rule that in habeas corpus proceedings such as that under review here, the court may not take testimony as to the merits of the prisoner's defense to the charges or as to his guilt or innocence. However, an examination of the New Jersey cases does not reveal any decision that directly meets the specific issue raised here.
We think it will be interesting and informative to state the prevailing rule in New Jersey and other jurisdictions with respect to the scope of the inquiry that may be made at a habeas corpus hearing in extradition cases.
The return of fugitives from one state to another is a federal and not a state matter, governed by the Constitution of the United States and the act of Congress passed pursuant thereto. U.S. Const., Art. IV, sec. 2. 18 U.S.C.A. c. 209, Extradition; Title 18, sec. 3182. See our Uniform Criminal Extradition Law adopted in New Jersey in 1936, R.S. 2:185-6 et seq. (now R.S. 2A:160-6 et seq.). U.S. ex rel. Silver v. O'Brien, 138 F.2d 217 (7 Cir., Ill. 1943), certiorari denied, 321 U.S. 766, 64 S.Ct. 522, 88 L.Ed. 1062; South Carolina v. Bailey, 289 U.S. 412, 53 S.Ct. 667, 77 L.Ed. 1292 (1933); People ex rel. Carr v. Murray, 357 Ill. 326, 192 N.E. 198 (Sup. Ct. 1934); Stark v. Livermore, 3 N.J. Super. 94 (App. Div. 1949). Our New Jersey courts have held that one of the purposes of the provisions of the Federal Constitution was "to impose an absolute obligation on each state to surrender criminals fleeing from the justice of another state" and that "if the demand be made in due form and the requisite documents exhibited, showing that the fugitive is charged with crime, the duty to surrender becomes merely a ministerial one." In the matter of Peter Voorhees, 32 N.J.L. 141, 145, 146 (Sup. Ct. 1867); In re Thompson, 85 N.J. Eq. 221, 227, 228 (Ch. 1915); Roberts v. Reilly, 116 U.S. 80, 6 S.Ct. 291, 94, 29 L.Ed. 544, 548 (1885). There is no obligation upon the Governor, upon whom requisition is made for a fugitive from justice, to hear the accused before ordering his *215 removal, and the person demanded has no constitutional right to be heard before the Governor. Munsey v. Clough, 196 U.S. 364, 25 S.Ct. 282, 49 L.Ed. 515 (1905); People ex rel Corkran v. Hyatt, 172 N.Y. 176, 193, 64 N.E. 825, 60 L.R.A. 774 (Ct. App. 1900), affirmed 188 U.S. 691, 23 S.Ct. 456, 47 L.Ed. 657 (1902); In re Murphy, 321 Mass. 206, 72 N.E.2d 413 (Sup. Jud. Ct. Mass. 1947); Pettibone v. Nichols, 203 U.S. 192, 204, 27 S.Ct. 111, 51 L.Ed. 148, 7 Ann. Cas. 1047 (1906); People of State of Illinois ex rel. Nichols v. Pease, 207 U.S. 100, 109, 28 S.Ct. 58, 52 L.Ed. 121 (1907). Under R.S. 2:185-12 (now R.S. 2A:160-12),
"When a demand shall be made upon the governor of this state by the executive authority of another state for the surrender of a person so charged with crime, the governor may call upon the attorney general or any prosecuting officer in this state to investigate or assist in investigating the demand, and to report to him the situation and circumstances of the person so demanded, and whether he ought to be surrendered."
Whether a hearing may be accorded by the Governor of this State to the accused is a matter of grace and not of right. In re Thompson, supra; In re Colier, 140 N.J. Eq. 469, 470 (E. & A. 1947). The Governor may properly exercise a discretion in determining whether a case contemplated by the Constitution and the laws of the United States has been presented for his action. He cannot be interfered with in the exercise of this discretion should he decide that no such crime is charged. 22 Am. Jur., Extradition, sec. 34, pp. 272, 273. There is apparently no authority whereby one may compel the Governor to issue his warrant if he refuses to do so. Drew v. Thaw, 235 U.S. 432, 35 S.Ct. 137, 138, 59 L.Ed. 302 (1914); People v. Murray, supra; Ex parte Wallace, 38 Wash.2d 67, 227 P.2d 737, 738 (Wash. Sup. Ct. 1951); Ex parte Moyer, 12 Idaho 250, 85 P. 897, 12 L.R.A.N.S. 227 (Sup. Ct. 1906). The executive warrant of a Governor is but prima facie sufficient to hold the accused and he is entitled to test the validity thereof by habeas corpus proceedings. *216 Katyuga v. Cosgrove, 67 N.J.L. 213 (Sup. Ct. 1901); In re Thompson, supra; Robb v. Connolly, 111 U.S. 624, 4 S.Ct. 544, 28 L.Ed. 542 (1884). The guilt or innocence of the accused may not be inquired into by the Governor "or in any proceeding after the demand for extradition, accompanied by a charge of crime in legal form as above provided, shall have been presented to the Governor, except as it may be involved in identifying the person held as the person charged with the crime." R.S. 2:185-28 (now R.S. 2A:160-28); In re Thompson, supra; In re Colier, supra; State v. Wilson, 135 N.J.L. 398 (Sup. Ct. 1947), and cases cited therein. In the case of Commonwealth ex rel. Bucksbarg v. Good, 162 Pa. Super. 557, 58 A.2d 842, 844 (1948), where the State of Ohio was seeking the return of the accused on a charge that he had escaped from confinement under a sentence imposed in that state, it was held that in the habeas corpus proceeding, the trial court erred by inquiring into the merits of the case when the prisoner was permitted to testify that he had been a law-abiding citizen since his escape and that he had been threatened with violence in denial of a fair and impartial trial in the demanding state, citing Commonwealth v. Supt. of Philadelphia County Prison, 220 Pa. 401, 69 A. 916, 917, 21 L.R.A.N.S. 939 (Sup. Ct. 1908), holding that:
"No state can be the asylum of a fugitive from justice, and hence it should promptly honor the requisition of a sister state for the extradition of a prisoner legally accused of committing an offense against the laws of that state. If the court on habeas corpus inquires into the merits of the charge against the prisoner, or into the motives which inspired the prosecution in the demanding state, it exceeds its authority under the constitutional and statutory provisions regulating the extradition of criminals."
Cf. Reed v. Colpoys, U.S. Marshal, 69 App. D.C. 163, 99 F.2d 396, 399 (Ct. App. D.C. 1938). The reason for the issuance of a warrant of extradition is not a proper subject of judicial inquiry. Ex parte Wallace, supra. The courts of the state of asylum have no authority in habeas corpus proceedings to consider the question of the present sanity or *217 insanity of an alleged fugitive from justice, but that must be determined by the law and courts of the demanding state. State ex rel. Davey v. Owen, 133 Ohio St. 96, 12 N.E.2d 144, 114 A.L.R. 686 (Sup. Ct. 1937). Nor may it inquire as to the alleged insanity of the accused at the time of the commission of the crime. Charlton v. Kelly, 229 U.S. 447, 33 S.Ct. 945, 57 L.Ed. 1274, 46 L.R.A., N.S. 397 (1913); State ex rel. Davey v. Owen, 133 Ohio St. 96, 12 N.E.2d 144, 114 A.L.R. 692. Nor may the court in the asylum state inquire into the validity and the merits of proceedings in the parole board in the demanding state and thereby decide upon the propriety of its action. In re Trignani, 13 N.J. Super. 306, 311 (Cty. Ct. 1951). The court may not inquire as to the motive or reasons that brought about the departure of the accused from the demanding state. In re Cohen, 104 N.J. Eq. 560, 563 (Ch. 1929). Nor may the court inquire as to the motive of the accused which induced him to depart from the demanding state where he was accused of having successfully conspired to effect his escape from a state hospital for insane criminals. Drew v. Thaw, supra. Any investigation as to the motives which induced the action taken by the Governors of the demanding and asylum states would be improper and irrelevant. Pettibone v. Nichols, supra; 94 A.L.R. Extradition-Inquiry into Motive, at p. 1496, citing Pettibone v. Nichols, supra; Drew v. Thaw, supra, and numerous decisions from other jurisdictions.
We now come to the specific question involved in this appeal, to wit: Whether the accused should have been permitted to offer testimony as to the motives and animus of the complaining witnesses who appeared before the grand jury in Massachusetts and whose testimony obviously brought about his indictment. Our examination of the New Jersey cases convinces us that our courts in dealing with the question of what evidence may be admissible on a habeas corpus proceeding in an extradition case, clearly hold that it is strictly limited to the questions of the validity of the extradition *218 proceedings, the identity of the accused as being the person named in the requisition and rendition and whether he is a fugitive from justice from the demanding state. La Sasso v. MacLeod, 136 N.J.L. 345, 351 (Sup. Ct. 1948). The courts of the asylum state have no right to consider the merits of his trial, the question of his guilt or innocence or whether his constitutional rights were violated in the proceedings leading to his conviction. State v. Wilson, supra, and cases cited therein. The general rule throughout the several jurisdictions of the United States is that
"The courts, on habeas corpus, will not inquire into the motives which induced a governor to grant, honor or refuse a requisition, since such an inquiry would be opposed both to the plainest principles of public policy and to freedom of action by the executive within his constitutional authority." 94 A.L.R., at p. 1496.
In 25 Am. Jur., Habeas Corpus, sec. 67, p. 192, the rule is stated:
"* * * The court, however, cannot go into the merits of the cause and is not allowed to inquire into the guilt or innocence of the prisoner or to let its decision be influenced by an opinion as to what should be the result of a trial of the person held for extradition, in the jurisdiction which seeks to obtain him for trial, by a suggestion that race prejudice in the demanding state will operate to deprive him of a fair and impartial trial or expose him to mob violence therein, or by the fact that extradition proceedings have been delayed. The scope of its inquiry is limited to a determination of the sufficiency of the papers and of the identity of the prisoner. * * *"
And further, in 25 Am. Jur., supra, sec. 68, pp. 193, 194:
"* * * Although there is some authority to the contrary, the rule supported by the weight of authority is that the motive which prompts the making of the accusation against the prisoner in the demanding state, the motive and purpose of the extradition proceedings, and the motives which prompted the governor to issue the extradition warrant are not proper subjects of inquiry in a habeas corpus proceeding to obtain the discharge of the prisoner held under such warrant."
Drew v. Thaw, supra; Pettibone v. Nichols, supra; People v. Murray, supra; Commonwealth ex rel. Bucksbarg v. Good, supra; In re Quilliam and Woodall, 88 Ohio App. 202, *219 89 N.E.2d 493 (Ohio Ct. App. 1949), appeal dismissed by Supreme Court, Quilliam v. Sweeney, 152 Ohio St. 368, 89 N.E.2d 494 (1949). In the case of State v. Gregg (Ohio Ct. App. 1941), appeal dismissed by Supreme Court, In re Gregg, 139 Ohio St., 170, 38 N.E.2d 411 (1941), it was held that the question of the motive or good faith of a prosecution is not admissible in a habeas corpus proceeding in an extradition matter, stating [68 Ohio App. 97, 40 N.E.2d 168]: "This is in accord with the great weight of authority in this country and the decisions of the Supreme Court of the United States," citing Drew v. Thaw, supra, wherein Mr. Justice Holmes, referring to extradition proceedings, said [235 U.S. 432, 35 S.Ct. 138]: "There is no discretion allowed, no inquiry into motives." See also, the case of People ex rel. Carr v. Murray, 357 Ill. 326, 192 N.E. 198, 94 A.L.R. 1487 (Sup. Ct. 1934), wherein the applicable cases in this country are collated. On the other hand, the courts of North Dakota in habeas corpus proceedings in an extradition case hold that the motive which lies behind an extradition proceeding may not be generally inquired into, save as it is necessary to show that the requisition is for the purpose of subjecting the defendant to prosecution for the offense charged and not merely to subserve private malice or to obtain service upon him for some other purpose. Ex parte Bruchman, 28 N.D. 358, 148 N.W. 1052 (Sup. Ct. 1914). And in Oklahoma, the rule is that in every extradition case the question of the good faith of the prosecution is open to inquiry on habeas corpus on the premise that the pertinent provision of the Federal Constitution  and the act of Congress passed to carry out that provision  was never intended to be used to set in motion the executive departments of the two states at the instance of a private person, to enable him to gratify his malice or to aid him in enforcing the collection of a debt. Ex parte Patrick, 86 Okl. Cr. 61, 189 P.2d 420, 422 (Okl. Crim. Ct. App. 1948); Ex parte Bishop, 85 Okl. Cr. 46, 184 P.2d 805 (Okl. Crim. Ct. App. 1947).
*220 In the instant case, the accused relies strongly upon the cases of Klaiber v. Frank, 9 N.J. 1 (1952) and In re Slauson, 73 F. 666 (C.C. Va. 1896). The Klaiber case did not involve the question whether evidence of guilt or innocence or of motive may be submitted in a habeas corpus proceeding in an extradition case. It involved a civil action on a foreign judgment in which it was established that a fraud had been perpetrated on the defendant after his return to the demanding state on a rendition warrant issued by the Governor of New Jersey. A criminal information filed in Florida against Frank, charging him with selling and secreting personal property upon which he had given a chattel mortgage as security for the payment of a promissory note, was made at the instance of an attorney named Miller, who was the prosecuting attorney of Broward County, Florida and was also attorney for the plaintiff in the civil action brought against Frank in Florida upon his enforced return. The Governor of New Jersey honored the requisition of the Governor of Florida for the rendition of Frank. Thereupon, Frank obtained a writ of habeas corpus to test the validity of the extradition proceedings and, at the hearing, the court refused to permit the introduction of testimony to establish the motive of the complaining witness in Florida, contending, inter alia, the charge was of a civil nature and not criminal. The County Court's dismissal of the writ was affirmed. Frank v. Naughright, 1 N.J. Super. 242 (App. Div. 1949). Within two days after Frank was returned to Florida, and while incarcerated in jail, he was served with summons ad respondendum in a civil action instituted by the complaining witness only three days prior thereto. Frank did not defend the civil suit and judgment by default was entered against him. Thereafter, an action was brought in the Superior Court, Law Division, to enforce payment of the Florida judgment. This latter action was defended by Frank, principally on the theory that he was immune from service of process while in Florida on the criminal charge and a fraud was perpetrated on the Florida court when judgment *221 was entered there against him. The Law Division decided against Frank. Klaiber v. Frank, 13 N.J. Super. 388 (Law Div. 1951). In reversing, Mr. Justice Heher, speaking for the Supreme Court, 9 N.J. 1 (1952), stated, inter alia:
"* * * The criminal action was but a pretext to bring the defendant within the domain of the Florida court for the purpose of proceeding against him civiliter. The course of proceeding in Florida bespeaks this design beyond reasonable doubt. It was not a bona fide invocation of the law for interstate rendition. It was rather a perversion of the extradition process to the service of a private and wholly foreign to its nature and function. * * * and when Frank was finally brought into Florida the civil action was begun forthwith and the prosecution of the criminal information abandoned."

* * * * * * * *
"Certain it is that if the executive authority of the asylum state was aware of the intent thus to use the extradition proceeding as a means to private ends, the rendition warrant could not lawfully issue. In re Slauson, 73 F. 666 (C.C.Va. 1896)." (Italics ours.)
It is quite apparent that the Klaiber case is not applicable. We concur in Mr. Justice Heher's condemnation of the abuse of the use of the criminal processes "as a means of bringing a party into a jurisdiction in order that service of civil process may be had on him there. Crusco v. Strunk Steel Co., 365 Pa. 326, 74 A.2d 142 (Sup. Ct. 1950)." However, it is significant that there does not appear one word of criticism or condemnation of the decision of the Appellate Division's affirmance of the county court's refusal in the habeas corpus proceeding to permit Frank to offer testimony as to motive. The issue decided by the Supreme Court was that
"A foreign judgment is subject to collateral attack for fraud in the procurement of the appearance of the defendant. * * * Thus, for want of jurisdiction in personam, the Florida judgment was void and not merely irregular or erroneous and voidable, and the judgment rendered thereon in this action has nothing to sustain it."
The hereinabove quoted language employed by Mr. Justice Heher has apparently encouraged Cohen to prosecute this appeal and upon which he fastens his hopes for a reversal. *222 Mr. Justice Heher's comments in the Klaiber case merely reiterate the prerogative of the Governor to "call upon the attorney general or any prosecuting officer in this state to investigate or assist in investigating the demand, and to report to him the situation and circumstances of the person so demanded, and whether he ought to be surrendered." N.J.S.A. 2A:160-12.
Nor does the Slauson case, supra, add any support to Cohen's contention. In this case the requisition of the Governor of Tennessee, honored by the Governor of Virginia, was based upon an ex parte affidavit charging Slauson with the crime "of a `fraudulent appropriation of money'" in the demanding state. At the habeas corpus proceeding, the court held that Slauson had the right to show the animus of the person who instigated the criminal proceeding. An examination of the case reveals that the court did not cite a single case in support of its holding. Additionally, for all that may appear from the opinion, the State may have interposed no objection to such proofs. At least, the case is silent with respect thereto. Further, in the Slauson case, it is apparent from the following significant comments of the court, that in admitting testimony to show motive or animus of the complaining witness, it was actuated principally by the fact that the requisition was based upon an ex parte affidavit, and not, as here, by indictments:
"* * * Requisitions for persons stigmatized as fugitives from justice, when issued, as in the case at bar, on mere ex parte affidavit, and not founded upon indictment, are liable to abuse. Little care can be taken to obtain the real facts of the case by the officers issuing a requisition. Papers are prepared and the demand issued, often in the most perfunctory manner; and it is impracticable for the governor, to whom the requisition is addressed, to inquire into the merits of the proceeding. * * *"
From a studied consideration of the opinion, it may be reasonably stated that the basis of the court's discharge of the prisoner was in fact:
*223 "The law in such proceedings requires that the charge shall be substantially set forth in the papers filed. In these papers there is no crime substantially set forth. There is merely a reference to a criminal statute, itself not identified by the reference. Merely to refer to a class of criminal acts is not to charge a specific crime. This is all that has been done in this affidavit. Nor does the affidavit set out important elements of this statutory offense. The warrant is vague, and does not inform the prisoner of the character of the crime, nor the time, place, or circumstance of its commission, of which every prisoner is entitled to be advised."
Assuming, arguendo, that the Slauson case is authority for the admissibility of testimony as to motive or animus, it is clearly contrary to the weight of authority throughout the United States, as hereinabove set forth.
In the instant case, Cohen made no denial of his identity as the person named in the indictments or that he had been in Massachusetts at the times mentioned in the indictments, nor did he make any application to the Governor following his arrest, seeking an opportunity to be heard before the Governor on the question of the good faith of the charges contained in the indictments, although he was taken into custody on February 28, 1952, and did not file his petition for writ of habeas corpus until on or about April 8, 1952. In conformity with the clear indication of our New Jersey cases cited hereinabove, we think that the rule that has been adopted in many other jurisdictions of the United States prohibiting an inquiry into the motives or animus of the complaining witnesses whose testimony has induced the indictments returned against the defendant in Massachusetts should prevail here. In passing upon the validity of a requisition it must be borne in mind that it is not the application of some creditor or person holding a selfish private motive and who may have instigated the prosecution, but that it is made at the instance of a sister state having sovereignty equal to our own. It would be destructive of and subversive to the clear intent and meaning of the Federal Constitution, if an investigation of its motives were permitted to be made by the asylum *224 state. A motive, when proved, is either a matter of express declaration or of circumstantial evidence. Such an inquiry, if allowed, might well result in endless trials on vague and ill-formed issues, requiring witnesses and depositions from distant points, testifying to no conclusive purpose. The end result might well be to embarrass the enforcement of the constitutional provision and, in many cases, would have the effect of total abrogation thereof. People ex rel. Carr v. Murray, supra.
The judgment dismissing the writ of habeas corpus is affirmed.