46 N.J. Super. 63 (1957)
133 A.2d 667
SALVATORE PASSALAQUA, PLAINTIFF-APPELLANT,
v.
CHARLES W. BIEHLER, WARDEN, CAMDEN COUNTY JAIL, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued July 15, 1957.
Decided July 25, 1957.
*66 Before Judges HUGHES, PRICE and COOLAHAN.
Mr. Joseph Tomaselli argued the cause for the plaintiff-appellant (Messrs. Malandra & Tomaselli, attorneys).
Mr. I.V. DiMartino, Assistant Prosecutor, argued the cause for the defendant-respondent (Mr. Mitchell H. Cohen, Camden County Prosecutor, attorney).
The opinion of the court was delivered by HUGHES, J.S.C. (temporarily assigned).
This is an extradition case, and is properly before us by virtue of an appeal (N.J.S. 2A:67-36), taken by an alleged fugitive from justice in the custody of the warden of the Camden County Jail, from the action of the Camden County Court in discharging the writ of habeas corpus issued to such appellant in recognition of his statutory right to test the legality of his arrest (N.J.S. 2A:160-18) and ordering his *67 rendition to the Commonwealth of Pennsylvania in compliance with the extradition warrant issued by the Governor of New Jersey. The record bespeaks procedural fulfillment of the rights accorded such an alleged fugitive under the Uniform Criminal Extradition Law (N.J.S. 2A:160-6 et seq.), by which our State and others have implemented the federal principle of interstate rendition and, as well, have clothed one subject thereto with procedural protection of those substantial rights which are his under the United States constitution and the acts of Congress in implementation thereof. U.S. Const., Art. IV, Sec. 2; 18 U.S.C.A. § 3182. Thus our Legislature, as well as our courts, have recognized that the return of fugitives from one state to another is a federal and not a State matter. In re Cohen, 23 N.J. Super. 209 (App. Div. 1952), affirmed 12 N.J. 362 (1953). That constitutional principle, settled now beyond fair dispute, sharply contains the permissible area of legal controversy to questions involving the propriety of interstate rendition in the light of the constitutional prerequisites thereof, including the substantial validity of the extradition proceedings, the identity of the accused as the person named in the requisition and rendition warrant, and his status as a fugitive from the justice of the demanding state. There is excluded from inquiry in the courts of the asylum state (except as incidental to the identity of the accused and his status as a fugitive from justice) the issue of his guilt or innocence of the basic criminal charge (N.J.S. 2A:160-28), or scrutiny of the motives inspiring an allegedly unjust prosecution (Frank v. Naughright, 1 N.J. Super. 242 (App. Div. 1949); Foley v. State, 32 N.J. Super. 154 (App. Div. 1954)), or even whether his constitutional rights were violated in the proceedings leading to his conviction in the demanding state. State v. Wilson, 135 N.J.L. 398 (Sup. Ct. 1947). In this narrowed setting the issues here involved seem not unduly complicated.
By two indictments duly returned the Grand Inquest of Montgomery County in Pennsylvania charged Salvatore Passalaqua with offenses involving the managing, conducting *68 and carrying on of an illegal lottery in violation of the statutes of that commonwealth. One indictment charged him with having committed the substantive offense of being concerned therein (such concernment "in any way" being classified as a misdemeanor by the statute, 18 P.S., § 4601) on October 17, 1956 "* * * and divers other times within two years last past * * *." The second indictment charged Passalaqua and others with a conspiracy to "* * * erect, set up, open, make and draw a certain illegal lottery for moneys, goods, wares and merchandise, and to sell, expose to sale and cause to be sold * * * certain lottery tickets * * *," during the same interval, i.e., on or about October 17, 1956 and "* * * divers other times within two years last past * * *." By verified petition the District Attorney of Montgomery County certified to the Governor of Pennsylvania that Passalaqua had been charged with such offenses by such indictments, annexing certified copies but describing the indictments as charging the commission of the offense "* * * on or about the 17th day of October, 1956 * * *," alleging that such defendant was in that county and commonwealth at the time of commission of such offense and fled the jurisdiction before arrest could be made, and setting forth the belief of the petitioner that such defendant was in Camden, New Jersey, and a fugitive from the justice of Pennsylvania. This petition invoked the requisition of the Pennsylvania Governor to the Governor of New Jersey for the arrest and delivery of such fugitive. Appropriate authentication of such basic documents was had and the Governor of Pennsylvania, certifying that the offenses of which Passalaqua was charged by such indictments constituted crimes under the laws of Pennsylvania, required the apprehension and delivery of such alleged fugitive.
On the basis of this requisition and his executive determination of the sufficiency of the documents supporting the same (N.J.S. 2A:160-11), the Governor of New Jersey issued his rendition warrant, substantially reciting the facts necessary to its validity, in conformity with the statute (N.J.S. 2A:160-15). Upon the basis of this requisition *69 and rendition warrant the appellant came into the custody of the warden of the Camden County Jail, to whom was issued the writ of habeas corpus involved in the present appeal. No formal return to the writ was filed, but the appellant appeared by counsel on the return thereof and participated by counsel in the hearing, which involved the taking of the testimony of various officers of Montgomery County. At the conclusion of the hearing, for the first time, counsel for the appellant pointed out to the court that no formal return had been filed and that he, accordingly, had not been given the opportunity, by the filing of a formal traverse, to challenge the validity of the basis upon which the prisoner was held in custody. He insisted that this comment be stated as an objection upon the record of the cause. The record shows, however, that the court fully considered and determined questions then raised as to the validity of the extradition proceedings, including, in essence, all of the questions now raised upon this appeal.
Aside from the objection voiced to the lack of a formal return to the writ, the appeal goes to the merits of constitutional issues properly before the court on any extradition contest, and we, accordingly, deal first with that procedural question. The statute dealing generally with the writ of habeas corpus (N.J.S. 2A:67-20 et seq.) requires that the public officer responding to the writ shall make a return thereto, and the purpose of the return is delineated by the statute as calling for an acknowledgment of the custody of the prisoner, with the production in court of his body if required by the writ, and a statement of the authority or cause of his confinement or restraint. This requirement secures to the prisoner his right to the copy of the warrant, commitment or detainer under which he is held (Patterson v. State, 49 N.J.L. 326 (Sup. Ct. 1887)) and frames the issue for determination by the court, aided, where the justification for the confinement or restraint is challenged by special matter, by the traverse to the return. The lack or insufficiency of the return, however, does not entitle the prisoner to be discharged from custody; it rests within the *70 power of the court to require the production of any warrant or commitment under which he is being held in custody, and it is quite apparent in view of the statutory right to the writ and the hearing thereon and the mentioned requirement that a return be filed, that an adjournment of the hearing to accommodate the filing of such a return would be in order, if applied for. But here there was no such application, and with knowledge that no return had been filed the appellant, by his counsel, fully participated in the hearing, waived formal proof of the requisition documents which were offered in evidence against him (which documents would have been the substantial content of any return which could have been filed by the respondent), and otherwise evidenced a mutuality of purpose with the attorney for the State that the court should hear and dispose of the matter expeditiously and on the merits. In fact, the record strongly indicates that the appellant was in court by professional prearrangement between counsel, having surrendered himself to the custody of the warden and having presented his application for the writ to the court, which issued it at the very commencement of the hearing. This procedure effectually and completely framed the issue in the cause and it would be inadmissible if, having participated therein without exception, appellant could now successfully challenge the propriety thereof upon the narrowly technical ground of lack of a formal return to the writ. It is significantly consonant with the apparent acquiescence of the appellant in such procedural joinder of the issue, that promptly upon the conclusion of the hearing and the announcement by the learned court of his decision to discharge the writ and deliver the prisoner to the custody of the demanding State, counsel for the appellant stated his intention to appeal and applied for and was granted bail on the basis that a substantial question for appeal existed. Where, at the hearing of the writ of habeas corpus, the prisoner is in court represented by counsel, makes no objection (except on grounds of substantive sufficiency) to the admission of the extradition documents, his failure to do so, his participation in the hearing on the merits without objection or *71 application for adjournment, and his obvious acquiescence in disposition on the merits, precludes him from raising, after hearing or on appeal, an objection to the lack of a formal return to the writ, particularly where such return could include only, as a justification for the detention, the very rendition documents so received in evidence. State v. Wilson, supra.
We thus reach the meritorious questions raised by the appeal. And these involve practically all of the issues which are litigable in this type of proceeding. Appellant denies that he was a fugitive from justice, on the ground that he was absent from the demanding state at the time of the alleged commission of crime; he puts in issue his identity as the person named in the requisition and rendition proceedings; he denies that the documents involved substantially charge a crime under the laws of Pennsylvania; and he challenges the constitutional validity of all proceedings leading to the discharge of the writ and the order rendering him to the custody of the demanding state. Misconceptions of law and fact underlie the appellant's denial that he was a fugitive from justice within the meaning of the constitutional article. He insists that the indictments charge him with having committed the substantive and conspiracy offenses on October 17, 1956, whereas in fact they charge the commission of those offenses on that date and on divers dates within two years last past, allegations peculiarly adaptable to the commission of continuing and conspiratorial offenses of this type and to be distinguished from offenses such as violence or theft, for instance, which normally are capable of commission only at a specific and determinable time.
It is essential, because interstate rendition depends upon the status of the prisoner as a fugitive from justice, that it appear (except for cases within the intendment of N.J.S. 2A:160-14, not here relevant) that he was in the demanding state at the time of commission of the crime, from prosecution for which he is alleged to be fugitive. Hyatt v. People of State of New York on the Relation of Corkran, 188 U.S. 691, 23 S.Ct. 456, 47 L.Ed. 657 (1903); Fowler *72 v. Ross, 90 U.S. App. D.C. 305, 196 F.2d 25 (C.A.D.C. 1952). The testimony of two county detectives at the trial below identified appellant as having been present on several days in March 1956 at a trailer, over which he appeared to exercise a proprietary capacity, which trailer was later "raided" on October 17, 1956, although the particulars of the "raid" were not fully disclosed. While appellant insists that these occasions were remote from the alleged commission of the crime on October 17, 1956, they were, of course, within the continuous period alleged as the time of commission of the offenses described. But conceding, arguendo, the validity of appellant's claim that the indictments contemplate the commission of crime specifically on October 17, 1956 and at no other time, it yet does not appear that he was absent then from Pennsylvania. He is mistaken in the assertion in his brief that "* * * The proofs on the part of the State established clearly that plaintiff was not in Pennsylvania on October 17, 1956." Our search of the transcript indicates that two witnesses testified to his presence there in March 1956, as stated, but that no evidence nor inference of any kind exists that he was absent on October 17, 1956. At the hearing below, he did not choose to testify nor offer other evidence. Although he asserted vaguely in his verified application for the writ that he was not in the demanding state "* * * at the time of the commission of the alleged crimes * * *," the probative force of this allegation was spent upon the issuance of the writ and was not, therefore, a substitute for testimonial or other evidence thereof at the hearing on the writ. The case is, therefore, bereft of a scintilla of evidence of the appellant's absence from the demanding state on the date which he characterizes as the date of the alleged commission of the offenses. In this respect there must be distinguished cases like Hyatt v. People of State of New York on the Relation of Corkran, supra, where the testimony of the relator of his absence from the demanding state at the relevant time stood uncontradicted, or like Fowler v. Ross, supra, where the state's admission of the prisoner's absence at the time the crime was committed *73 "* * * overcame and destroyed the presumption of his presence there which was created by the demanding papers." No such evidence, stipulation or admission is discernible in the record of the case sub judice.
In such posture, the recital of the extradition warrant itself, which warrant we find to be valid and unexceptionable, attesting to the status of appellant as a fugitive from the justice of the demanding state, constitutes prima facie evidence thereof and that presumption prevails unless rebutted and overcome by affirmative evidence to the contrary. Roberts v. Reilly, 116 U.S. 80, 6 S.Ct. 291, 29 L.Ed. 544 (1885); Katyuga v. Cosgrove, 67 N.J.L. 213 (Sup. Ct. 1901); Hyatt v. People of State of New York on the Relation of Corkran, supra; Hogan v. O'Neill, 255 U.S. 52, 41 S.Ct. 222, 65 L.Ed. 497 (1920); Foley v. State, supra.
As to the challenge of the proof of identity, our examination of the testimony assures us that the learned court below was amply justified in his finding that appellant was in truth the person described in the requisition and rendition documents and charged by the indictments mentioned. Similarly, we determine that those indictments were manifestly sufficient to charge crimes under the laws of Pennsylvania. If the indictment charges a crime against the laws of the demanding state, the sufficiency of the indictment to warrant conviction and judgment according to the law of the land must be determined by the courts of that state, not by those of the asylum state. In re Williams, 101 N.J. Eq. 75 (Ch. 1927); Drew v. Thaw, 235 U.S. 432, 35 S.Ct. 137, 59 L.Ed. 302 (1914); Frank v. Naughright, supra. Our examination of the course of the extradition proceedings, including the indictments, the petition and demand for requisition, the executive rendition warrant of the New Jersey Governor, and the findings of fact and conclusions of law of the learned trial court, convinces us of their procedural and substantive regularity in every respect. Since the proofs supporting the judgment of the Camden County Court were sufficient, we deem the decision of that court correct, and it is hereby affirmed.