136 N.J. Super. 24 (1975)
343 A.2d 845
IN THE MATTER OF NEIL LUCAS, FUGITIVE FROM THE STATE OF NEVADA.
Superior Court of New Jersey, Law Division (Criminal).
Decided May 12, 1975.
*26 Mr. Michael D. Schottland argued the cause for Neil Lucas (Messrs. Chamlin, Schottland and Rosen, attorneys).
Mr. Robert S. Raymar argued the cause on behalf of Honorable Brendan T. Byrne, Governor of the State of New Jersey (Mr. Lewis B. Kaden, Special Counsel to the Governor, attorney).
Mr. Marc J. Friedman, Deputy Attorney General argued the cause for the Attorney General of New Jersey appearing amicus curiae (William J. Hyland, attorney).
*27 Mr. Donald W. Peppler, Jr., Assistant Prosecutor of Monmouth County argued the cause for the Prosecutor of Monmouth County appearing amicus curiae (James M. Coleman, Jr., attorney).
PATRICK J. McGANN, Jr., J.S.C.
This is an extradition matter. In it an appeal has been taken from an order of this court dated May 29, 1975, based on an oral determination made May 12, 1975. This opinion is filed pursuant to R. 2:5-1(b). The precise issue is not easily stated without a review of the procedural history of the matter.
On March 6, 1973 a warrant of arrest was issued in the State of Nevada for Neil J. Lucas, a/k/a Dr. Julius B. Hoffman, a/k/a Dr. Antonio R. Luciano, a/k/a Carl Del Ventiselti. He was charged with two counts of obtaining money under false pretenses, in violation of Nevada law. The offenses allegedly had occurred on November 24 and November 27, 1972. The warrant and complaint were forwarded to the Monmouth County Prosecutor's Office by the Sheriff of Clark County, Nevada, on April 30, 1973, and received May 4, 1973. Lucas was arrested on May 8, 1973. N.J.S.A. 2A:160-21.
The Grand Jury of Monmouth County had previously, on February 6, 1973, returned Indictment No. 584-72 against Lucas, charging him with three counts of obtaining money under false pretenses, in violation of New Jersey law based on incidents occurring October 11, November 3 and November 16, 1972. On those charges he had, through counsel, entered a not guilty plea by mail on April 27, 1973. He was represented then and throughout all proceedings to the present by the same firm of attorneys. Under Indictment No. 584-72 defendant actively pursued all pretrial procedures and remedies, including discovery applications and a motion to suppress evidence.
His arrest, on May 8, 1973, was a technical one since he had arranged through counsel to appear before the court. *28 He indicated then that he would oppose any extradition to Nevada and simultaneously moved before the assignment judge that bail be set. It was in the amount of $10,000. Bail was posted. N.J.S.A. 2A:160-23 and 24.
Thereafter, on May 21, 1973 the Governor of Nevada issued his requisition warrant N.J.S.A. 2A:160-11. It was duly received and processed, and on May 31, 1973 Governor Cahill issued his arrest and rendition warrant (N.J.S.A. 2A:160-15 and 16) and forwarded it to the Monmouth County Prosecutor. At that point defendant was aware that formal extradition had been initiated; the State was aware that he intended to contest it; defendant was free on bail.[1] Although defendant did not formally apply for a writ of habeas corpus to test the validity of the extradition, the assignment judge nevertheless entered an order fixing a hearing date for August 7, 1973. That date passed without a hearing and neither defendant nor the State took any affirmative action to bring the extradition hearing on, although the prosecutor, on August 20, 1973, wrote to defense counsel noting the lack of a hearing on August 7. At that point the fact that both sides tacitly agreed to allow the extradition matter to be quiescent was understandable since both were girding for the upcoming trial on the New Jersey charges. That trial took place from October 1 through 3, 1973. Lucas was found guilty and sentenced on October 26, 1973 to the Youth Correctional Institution Complex. He was paroled on September 6, 1974.
The extradition hearing which had been held in abeyance was conducted by this court on November 1, 14, 15 and 25, 1974. On November 26, 1974 an order was entered directing that Lucas be turned over to the custody of the proper Nevada authorities and returned forthwith to Nevada. Defendant promptly applied for continuation of his release *29 on bail pending his appeal of that rendition order. This court denied the bail application. Lucas surrendered to the custody of the Sheriff of Monmouth County as directed by this court, pending the outcome of his appeal. Bail was denied based on the determination that there was no provision in the law for the same; that the Uniform Extradition Act and the interstate rendition clause of U.S. Const., Art. IV, § 2, par. 2, required immediate surrender to the demanding state; that if bail were to be set it should be done by the courts of Nevada  the state whose laws defendant had allegedly offended. In re DeGina, 94 N.J. Super. 267 (App. Div. 1967).
Lucas filed his notice of appeal with the Appellate Division and sought from that court the setting of bail pending his appeal. His motion was denied. He moved for the setting of bail before our Supreme Court. His motion was denied. He then petitioned for writ of habeas corpus to the United States District Court for the District of New Jersey. That application was denied on February 28, 1975, together with his motion for bail.
Curiously enough, concomitant with the appellate relief he sought on bail pending review of the rendition order, Lucas' counsel was in contact with Governor Byrne's office and furnished the Governor's special counsel with copies of all appellate briefs and proceedings.
Governor Byrne apparently determined that he would set bail. His special counsel spoke with the Monmouth County Prosecutor's Office, and communicated that intent. The prosecutor voiced opposition to that procedure, but faced with the executive determination agreed that $20,000 would be an adequate amount of bail security. The document (a copy of which is appended hereto as Exhibit J-1) then was signed by the Governor and Secretary of State and delivered to Lucas' counsel. He, in turn, presented it to the county clerk and demanded that Lucas be allowed to post the bail. The clerk sought judicial instruction from the *30 court. The matter was listed for hearing as to the efficacy of the "Amended Arrest Warrant"; the participation of Governor's special counsel was solicited, and the county prosecutor and the Attorney General were asked to appear amicus curiae.
Three related questions are involved:
1. Does the Chief Executive, in issuing an arrest warrant, have the right to provide therein that when the accused is arrested he shall be immediately bailed on terms set by the Chief Executive?
2. After an arrest warrant in the usual form has been issued by the Chief Executive may he, after the arrest of the accused, exercise a bail-setting determination?
3. May a successor Governor to the one originally issuing the arrest warrant, after the execution of the warrant, act to "amend" the original warrant and set bail  after the bail application has been denied by the Supreme Court of this State?
There is no right to bail pending appeal of an extradition proceeding
At the outset it should be noted that the authority for extradition is our Federal Constitution. U.S. Const., Art. IV, § 2, cl. 2. See State v. Phillips, 62 N.J. Super. 70 (App. Div. 1960); In re Cohen, 23 N.J. Super. 209 (App. Div. 1952).
A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having jurisdiction of the Crime. [U.S. Const., Art. IV, § 2, cl. 2]
The constitutional mandate imposes "an absolute obligation on each state to surrender criminals fleeing from the justice of another state". In re Peter Voorhees, 32 N.J.L. 141, 145 (Sup. Ct. 1867), cited with approval in In re Thompson, 85 N.J. Eq. 221, 227 (Ch. 1915).
*31 Implementation for the constitutional mandate is found in N.J.S. 2A:160-1 et seq. There it is stated that "it is the duty of the governor of this state to have arrested and delivered up to the executive authority of any other state * * * any person charged in that state with treason, felony or other crime * * *." N.J.S.A. 2A:160-10.
The Uniform Criminal Extradition Act, adopted in New Jersey in 1936, authorizes the defendant's release on bail until such time as a warrant of arrest is issued by the Governor. N.J.S.A. 2A:160-24:
* * * A judge or magistrate in this state may admit the person arrested to bail by bond or undertaking, with sufficient sureties, and in such sum as he deems proper, conditioned for his appearance before him at a time specified in such bond or undertaking, and for his surrender, to be arrested upon the warrant of the governor of this state.
There is no further provision in the Extradition Act which authorizes bail for a person under process for extradition.
The leading New Jersey case on the subject is In re Thompson, 85 N.J. Eq. 221 (Ch. 1915). As stated therein by Chancellor Walker (at 264), "there is no statute of this state authorizing a person charged with crime in another state, and arrested on our governor's warrant of extradition, to be admitted to bail here."
No right to bail exists at common law in favor of a person taken up on an extradition warrant, for extradition is not a proceeding according to the course of the common law * * *. In other words, there is no such thing as a common law right of bail in favor of persons taken up on extradition warrants. [Id at 264]
The policy reason for the denial of post-warrant bail in extradition proceedings was set forth by the United States Supreme Court in Wright v. Henkel, 190 U.S. 40, 23 S.Ct. 781, 47 L.Ed. 948.
The demanding government, when it has done all that the treaty and the law require it to do, is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under *32 obligation to make the surrender; an obligation which it might be impossible to fulfill if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment. [190 U.S. 62, 23 S.Ct. 786, 47 L.Ed. 955]
This position that a defendant is not entitled to bail after issuance of the warrant is supported by State v. Second Judicial District Court, County of Washoe, 86 Nev. 531, 471 P.2d 224 (Sup. Ct. 1970). There a fugitive was being held under a warrant of the governor for a crime punishable by death or life imprisonment under the laws of the demanding state, California. The accused exercised his right to test the legality of his arrest and additionally filed a petition for admission to bail. Bail was granted and the State appealed, claiming that the court had exceeded its jurisdiction in entering the bail order.
The Supreme Court of Nevada, noting that its State had adopted the Uniform Criminal Extradition Act, observed that the act provided for admission to bail in all cases, unless the offense charged was punishable by death or life imprisonment, "pending the issuance of the governor's warrant for the fugitive's arrest." Id. at 225. Like the New Jersey act, the Nevada act made no provision for bail after the governor had issued his warrant. In vacating the order admitting the accused to bail, the Supreme Court of Nevada noted that
* * * The Uniform Criminal Extradition Act sets forth the conditions when a fugitive may be admitted to bail during extradition proceedings, it covers only the period from the fugitive's arrest to the issuance of the governor's warrant, and not the period thereafter. [at 225]
In considering the right to bail under the Uniform Criminal Extradition Act, the Supreme Court of Iowa reached the same result as that reached by the Supreme Court of Nevada in State v. Second Judicial District Court, County *33 of Washoe, supra. In Allen v. Wild, 249 Iowa 255, 86 N.W. 2d 839 (1957), the accused petitioned for a writ of habeas corpus to test the legality of his arrest. His petition was subsequently dismissed and he was released on bail pending appeal. The issue before the court was "whether the district court was empowered to order that, pending determination of an appeal therefrom its judgment annulling the writ of habeas corpus be superseded and Mack released from custody upon his furnishing a supersedeas bond."
The court indicated that the portion of the Constitution of Iowa requiring bail was not repugnant to the disallowance of bail pending appeal from a denial of a writ of habeas corpus reviewing the legality of a governor's arrest warrant; that the state constitutional guarantee of bail applied only to offenses against the State of Iowa and did not apply to defendants who were being held pursuant to the Extradition Act. The court then recognized that the section of the Uniform Extradition Act which permits admission to bail applies "only while the person is being held to await requisition and before the warrant for his arrest is issued by the Governor." Id. at 842. The court was of the belief that the act contained no provision for bail after the arrest upon such a warrant and that "it may be fairly inferred the omission of such provision was intentional." Id. It was recognized by the Supreme Court of Iowa that the weight of authority clearly supported the view that there is no power to grant bail under such circumstances. Most of the cases cited by the court for this proposition arose out of states that had similar constitutional and statutory provisions to Iowa. Included among the cases cited was In re Thompson, supra.
A similar result obtained in Walden v. Mosley, 312 F. Supp. 855 (N.D. Miss. 1970). There petitioner raised the issue of whether he was entitled to bail pending the determination of a habeas corpus proceeding challenging his extradition. The federal district court noted (at 860) that "the *34 cases have often held that such provisions [for bail] are inapplicable to extradition proceedings." The court recognized that in those few reported cases where a petitioner had been admitted to bail pending a habeas corpus hearing on extradition, it had almost uniformly been before the governor of the asylum state had issued his warrant of rendition. Because the governor of Mississippi had issued such a warrant, the court found that (at 860) petitioner's admission to bail would be improper.
Other cases supporting this position are listed and described in the annotation at 56 A.L.R.2d 668, 676. It appears from these cases that there is a general rule denying bail pending habeas corpus review after the warrant has issued from the governor. See In re Amundson, 74 N.D. 83, 19 N.W.2d 918 (Sup. Ct. 1945); State ex rel. Stringer v. Quigg, 91 Fla. 197, 107 So. 409 (Sup. Ct. 1926); Ex parte Grabel, 248 S.W. 2d 343 (Ky. Ct. App. 1952); Grano v. State, 257 A.2d 768 (Del. Super. Ct. 1969); Buchanan v. State, 166 So.2d 596 (Fla. Ct. App. 1964). Little authority can be found for the proposition that the court has the power to grant bail after the warrant has issued.[2] The denial of bail in this situation is not violative of any state constitution because the accused is not being held for violation of the law of the holding state. But his federal and state constitutional right to bail will be afforded to him upon his reaching the requesting state. Policy considerations, supported by legal precedents, require that once a warrant issues, the accused cannot be admitted to bail by the state of his arrest.

*35 The Governor's Powers in Connection with Extradition Matters are Narrowly Limited.
The courts of this State have uniformly held that one of the purposes of the provisions of the Federal Constitution was "to impose an absolute obligation on each state to surrender criminals fleeing from the justice of another state", and that if the demand be made in due form and the requisite documents exhibited showing that the fugitive is charged with crime, the duty to surrender becomes merely a ministerial one. In re Cohen, 23 N.J. Super. 209 (App. Div. 1952), citing In re Voorhees, supra, 32 N.J.L. at 145, 146 (Sup. Ct. 1867); In re Thompson, supra; Roberts v. Reilly, 116 U.S. 80, 6 S.Ct. 291, 29 L.Ed. 544 (1885).
When considering the matter, the Governor need only find that the accused is the party named in the requisition and that he is a fugitive from justice. State v. Phillips, 62 N.J. Super. 70 (App. Div. 1960), citing Passalaqua v. Biehler, 46 N.J. Super. 63, 67 (App. Div. 1957). In determining whether he is a fugitive from justice there need be a finding that "in substance a crime is alleged [citation omitted], and that the accused having committed said crime has `fled' from the `demanding' jurisdiction." Id. at 75. It must also appear that the accused was present in the demanding state at the time the crime was committed. Id.
Upon finding the foregoing conditions to exist, the Governor issues the executive warrant. At that time the accused is entitled to test the legality of his arrest. N.J.S.A. 2A:160-18.
The only discretion held by the Governor in these matters is in his determination of "whether a case contemplated by the Constitution and the laws of the United States has been presented for his action." In re Cohen, supra, 23 N.J. Super. at 215. If he should decide that no such crime is charged, there can be no interference with this exercise of discretion. Id., citing 22 Am. Jur. Extradition, § 34 at *36 272, 273. There is no way to compel the Governor to issue his warrant should be refuse to do so. In re Cohen, supra.
In the present case Governor Cahill met the threshold questions and determined that a proper case had been presented for his action. This is evidenced by his having signed the warrant in question. Once a Governor has reached this decision, his function is merely ministerial and he is required to proceed pursuant to the Extradition Act. The act requires that the warrant be issued and does not permit qualifications or conditions to be placed upon the issuance.
Even where the Governor has reservations regarding the fate of defendant after the issuance of the warrant, he is not authorized to refuse the issuance. In re Paramore, 95 N.J. Eq. 386 (Ch. 1924). In that case the Governor conducted a hearing and indicated that he feared the prisoner would be lynched were he to be returned to the State of Georgia. The court said:
In granting the extradition, the Governor very properly concluded that the fear and apprehension of the prisoner that he would be lynched could not be lawfully entertained by him as a justification for refusing the request of the Governor of Georgia. [at 388]
It was held that the United States Constitution and the federal statute "made it obligatory upon him [the Governor] to honor the requisition." Id. at 388, citing In re Thompson, supra.

The Governor has no Power to Grant Bail
Our Constitution divides the powers of government among three distinct branches, the legislative, executive and judicial. N.J. Const. (1947), Art. III, par. 1. The executive power is specifically vested in the Governor by Art. V, § I, par. 1, and the judicial power is vested in the Supreme Court, Superior Court, County Courts and inferior courts of limited jurisdiction by Art. VI, § I, par. 1. The Supreme Court is specifically empowered to "make rules governing the *37 administration of all courts in the State and, subject to the law, the practice and procedure in all such courts." Art. VI, § II, par. 3.
Rule 1:1-2 of our court rules states that the court rules, inclusively, shall be "construed to secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay."
The authority to admit a defendant to bail is specifically vested in judges of the Superior Court or the County Courts in the county in which an offense was committed or an arrest made. R. 3:26-2. No authority can be found which gives the Governor the power to admit a defendant to bail. Such a course of action is inconsistent with the separation of powers of Article III of the Constitution of 1947.
That conclusion is confirmed by a fair reading of the Uniform Criminal Extradition Act N.J.S.A. 2A:160-6 et seq. It is patent that any references to the setting of bail therein are in the traditional sense, viz., that admission to bail is a judicial function. See, for example, N.J.S.A. 2A:160-24. It is equally clear that the act contains no provision granting bail powers to the Executive. 8 Am. Jur.2d, Bail § 9 at 788.
Conceding this, Governor's counsel points to N.J.S.A. 2A:160-29 as granting sufficient latitude to the actions of the Chief Executive so that bail-granting power may be inferred therefrom. That section states that "The governor may recall his warrant of arrest or may issue another warrant whenever he deems proper."
The dearth of annotations under that section may indicate that its brief and easily understood language has not required judicial explanation in the past. Be that as it may, the interpretation sought here by the Executive would result in a torturing of the legislative language beyond all common sense of it. This court will not do so.
For the foregoing reasons I determine that a Governor has no power to allow bail when issuing his arrest *38 warrant under the Uniform Criminal Extradition Act.[3]A fortiori, a successor Governor has no power to amend a fully executed arrest warrant issued by his predecessor for the purpose of setting bail.

EXHIBIT J-1

STATE OF NEW JERSEY

EXECUTIVE DEPARTMENT
THE GOVERNOR OF THE STATE OF NEW JERSEY, TO THE SHERIFF AND WARDEN OF THE COUNTY OF MONMOUTH AND ANY OTHER PEACE OFFICERS OF AND IN THE SEVERAL COUNTIES, CITIES AND MUNICIPALITIES IN AND OF THIS STATE, GREETING:
WHEREAS, the Honorable Governor William Cahill did on the 31st day of May, 1973, issue a Warrant for the arrest of one Neil J. Lucas, a/k/a Dr. Julius B. Hoffman, a/k/a Dr. Antonio R. Luciano, a/k/a Carl Del Ventisetti, being one and the same person and pursuant thereto, that person was taken into custody by representatives of law enforcement agencies of the State of New Jersey and the said person, being one and the same person as Neil J. Lucas, and it appearing that that person is presently incarcerated in the Monmouth County Correction Institution, Freehold, New Jersey, under the care, custody and control of the Sheriff of Monmouth County and the Warden of said correction institution;
And it further appearing that an appeal is presently pending in the Superior Court of New Jersey, Appellate Division, bearing Docket No. A-910-74;
And it further appearing that on January 8, 1975, the Superior Court, Appellate Division, granted to said Neil J. Lucas a stay of his extradition to the State of Nevada;
*39 It is therefore ORDERED on this seventh day of May, 1975, that the warrant of May 31, 1973 be and is hereby amended to provide that Neil J. Lucas be immediately released from incarceration at the Monmouth County Correction Institution; that upon his release he remain within the jurisdiction of the State of New Jersey and that he shall upon the lifting of the stay issued by the Superior Court, Appellate Division, present himself to such appropriate authority as I designate for extradition to the State of Nevada. This Order providing for the release of said Neil J. Lucas, shall not go into effect unless and until the said Neil J. Lucas has signed a personal recognizance in the amount of $20,000.00, which amount was found to be satisfactory by the Prosecutor of Monmouth County to secure his presence to answer the further Order of the Governor to be further guaranteed by the execution of a personal and property recognizance by his parents, John T. Lucas and Althea Lucas, in accordance with the practice and procedure of the Court Clerk's Office of the County of Monmouth.
 IN TESTIMONY WHEREOF,
 I have hereunto set my hand
 and caused the Great Seal of the
 State to be affixed at Trenton,
 this seventh day of May in the
 [SEAL] year of our Lord one thousand
 nine hundred and seventy-five.
 By the Governor:
 /s/ Brendan T. Byrne, Governor
 /s/ J. Edward Crabiel,
 Secretary of State
NOTES
[1] As will appear, infra, his bail at this point should have been revoked. He was no longer entitled to it. N.J.S.A. 2A:160-24.
[2] See Artukovic v. Boyle, 107 F. Supp. 11 (D.C. Cal. 1952), rev'd on other grounds, 211 F.2d 565 (9 Cir.1952), cert. den. 348 U.S. 818, 75 S.Ct. 28, 99 L.Ed. 645, reh. den. 348 U.S. 889, 75 S.Ct. 202, 99 L.Ed. 698 (1954); and Ruther v. Sweeney, Ohio App., 137 N.E.2d 292 (App. Ct. 1956).
[3] Cf. 8 C.J.S., Bail, § 40 at 112, wherein it is stated that power to allow and fix bail is not incident to a governor's power to reprieve.