151 N.J. Super. 106 (1977)
376 A.2d 580
THE STATE OF NEW JERSEY, PLAINTIFF,
v.
PETER J. SINACORE, JR., DEFENDANT.
Superior Court of New Jersey, Law Division  Criminal.
Decided May 25, 1977.
*109 Mr. Peter J. Sinacore, Jr., pro se.
Mr. Donald W. Peppler, Jr., Assistant Prosecutor for the State (Mr. James M. Coleman, Jr., Monmouth County Prosecutor, attorney).
McGANN, J.S.C.
By this motion defendant seeks to correct an allegedly illegal sentence to the end of obtaining credit for time spent in out-of-state custody while resisting extradition efforts. The essential history is this. On March 27, 1972 the bodies of Kathleen Miley and Robert Fraser were found in a rural area of Holmdel Township. Each had been shot in the head. They were from Long Island. Investigation pointed to Sinacore as the culprit. On April 27, 1972 he was indicted by the Monmouth County Grand Jury on the charge of committing the two murders. On the same day he was taken into custody by the Nassau County Police Department, New York, on a complaint charging him as a fugitive from justice in New Jersey on the murder indictment. Later that day he was brought before a magistrate in Nassau County, admitted being the person named as a fugitive in the complaint, and refused to waive extradition. An extradition hearing was set for May 26, 1972 (to permit time for the processing of formal extradition papers); bail was set at $250,000 and he was remanded to jail. After receipt of a "Pre-Parole Risk Report," bail was revoked on May 5, 1972 and Sinacore was thereafter held without bail. On May 26, 1972 the extradition hearing was adjourned to June 23, 1972 pending receipt of the New York Governor's warrant (the New Jersey Governor's Requisition having been forwarded on May 9, 1972). Sinacore continued in jail without bail. The extradition hearing was held on July 6, 1972. *110 At its conclusion Sinacore was turned over to the custody of Monmouth County detectives.
He was thereafter tried and convicted of the two murders and sentenced to concurrent life terms on October 11, 1972. He was credited with 96 days spent in custody in the Monmouth County jail from July 6, 1972. On this motion he seeks credit for the time spent in the Nassau County jail while resisting extradition  69 days. It is his view that he is entitled to the credit by virtue of R. 3:21-8. That rule provides as follows:
Credit for Confinement Pending Sentence. The defendant shall receive credit on the term of a custodial sentence for any time he has served in custody in jail or in a state hospital between his arrest and the imposition of sentence.
The issue narrows to this: Is time spent in jail in a foreign state during the process of resisting interstate rendition "time * * * in jail * * * between his arrest and the imposition of sentence" as contemplated by the rule? For the reasons which follow, it is not. Defendant is not entitled to additional credit.
The purpose of the rule is clear and salutary. The concept of post-sentence credits by way of "commutation" time has long been a part of our law by way of legislative enactment. N.J.S.A. 30:4-140, 30:4-92, 30:4-123.10. Under that policy, and on conditions fixed by the Legislature, the Executive Branch may release a convict from prison earlier than the time specified by the sentencing judge. Presentence credit is a newer concept. It became mandatory on January 1, 1953 with the adoption of Rule 2:7-10(g)  the predecessor of R. 3:21-8. It was a reasoned response to the delays in criminal trials caused by ever-burgeoning calendars and the patent disparity in pretrial incarceration suffered by the poor compared to the affluent. In short, the rule was motivated by a basic sense of fairness. If the State arrested the person; set a bail which, while reasonable in amount, could not be met; kept the person in confinement until a trial date which could *111 not be promptly set  the least it could do would be to give him credit for the presentence punishment he had already undergone for his criminal act. The passage of time and apparent legislative concurrence make the basic proposition policy of this State. See State v. Beatty, 128 N.J. Super. 488, 490 (App. Div. 1974).
To then argue that the rule should be read "broadly" or "narrowly" adds nothing to the clarity of the result. It is to be read "sensibly," based on the language the court used, the evident purpose for which it was adopted and against the existing state of the law when adopted. It must be read so as to produce realistic rather than unrealistic results. For example, if at his arraignment on an indictment the accused by his act contemns the court and is sentenced on the spot to three months in the county jail for it, no reasonable person would urge that he is entitled to three months credit when later sentenced on the indictable charge  even though a literal reading of the rule would lead to that conclusion. And while fair dealing is the basis for the rule it does not require that excess time served on one charge must be credited by the State to time to be served on a completely unrelated charge. State v. Marnin, 108 N.J. Super. 442 (App. Div. 1970). The credit to be given for presentence confinement is only that "attributable to the arrest or other detention resulting from the particular offense." Therefore, time spent in federal confinement may not be credited against a sentence for a state offense even though the state sentence is run concurrently with the federal sentence. State v. Council, 137 N.J. Super. 306 (App. Div. 1975). See also, State v. Brandfon, 38 N.J. Super. 412 (Cty. Ct. 1955), aff'd o.b. 40 N.J. Super. 328 (App. Div. 1956).
This application arises from an extradition proceeding. Extradition is not a court proceeding. It is unique. It does not involve directly the judicial branches of the states, but rather, the chief executives of each.
Extradition has been defined as "the surrender to another [state or] country of [a person] accused of an offence *112 against its laws, there to be tried, and, if found guilty, punished." Fong Yue Ting v. United States, 149 U.S. 698, 13 S.Ct. 1016, 37 L.Ed. 905 (1893). Absent a treaty between nations (cf. 18 U.S.C.A. § 3181), there is no requirement that one sovereignty, at the request of another, capture a person within its borders and turn him over to that sovereignty. If done, it is solely a matter of comity. In re Thompson, 85 N.J. Eq. 221, 226 (Ch. 1915).
Our Federal Constitution makes rendition mandatory among the sovereign states. U.S. Const., Art. IV, § 2 cl. 2, provides:
A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.
Congress enacted legislation to effectuate the constitutional mandate. 18 U.S.C.A. § 3182. Interstate rendition is essentially a federal and not a state matter. The several states, however, may, and have, passed legislation ancillary to the federal purpose. The Uniform Criminal Extradition Act has been adopted in New York (McKinney's Crim. Code § 827 to 859) and in New Jersey (N.J.S.A. 2A:160-6 et seq.).
Interstate rendition is the nondiscretionary exercise of executive responsibility under a constitutional imperative. Sinacore's arrest in New York was by New York authorities acting under powers granted by the Uniform Criminal Extradition Act adopted to comply with that federal imperative. If state action was involved in the arrest, it was the action of New York State. To say that Sinacore's arrest by New York authorities was the result of New Jersey's action and therefore that it was a New Jersey arrest entitling Sinacore to credit on his ultimate sentence simply begs the question. One might just as well blame the Constitution of the United States for his arrest.
*113 His arrest was not the result of New Jersey's action; it was the result of his own action in killing two people in New Jersey.
What is at issue here is not the arrest  it is the detention subsequent to the arrest. Temporary detention is provided in the uniform act to permit time for the requisition warrant to be prepared and signed by the Governor of the demanding state; to be reviewed for correctness by the Governor of the asylum state upon its receipt by him, and for his decision whether or not to issue his warrant for rendition. Custody during that time is necessary if the ultimate constitutional responsibility that the person be turned over is to be met. Bail is available under the uniform act to one charged other than with a capital offense, up to the time the rendition warrant is signed. In re Lucas, 136 N.J. Super. 24 (Law Div. 1975), aff'd 136 N.J. Super. 460 (App. Div. 1975), certif. den. 69 N.J. 378 (1976). See N.J.S.A. 2A:160-24. In this case Sinacore was never entitled to bail.
Had Sinacore not decided to test the validity of the actions of the Governors of New York and New Jersey, there would have been no detention in New York. He would have been turned over to New Jersey jurisdiction, been lodged in a New Jersey jail (if unable to post the bail which would have been set) and have accrued presentence credit time. He chose not to do so. His detention from the time of arrest until the time Governor Rockefeller of New York, issued his rendition warrant was a constitutional necessity given the nature of interstate rendition. New Jersey had nothing to do with that.
However, once the Governor of the asylum state issues the rendition warrant, further detention in the asylum state is based on an entirely separate legal principle. The Governor of the asylum state must, in a nondiscretionary manner, comply with the requisition of the Governor of the demanding state. It is precisely because no discretion *114 is permitted that the accused is entitled to challenge the validity of the actions by means of the writ of habeas corpus. In re Thompson, supra, 85 N.J. Eq. at p. 228. That right is preserved in the uniform act (see N.J.S.A. 2A:160-18). It is the hearing fixed on the return to such a writ which we commonly call the "extradition hearing." Until the hearing the prisoner is not entitled to remain free. While he may challenge the propriety of the issuance of the Governor's rendition warrant by a habeas corpus application, he must remain in custody while doing so. In re Lucas, supra, 136 N.J. Super. at 31. That custody is not criminal arrest. Once he refuses to waive extradition and asks for a hearing he has in effect asked for and received a writ of habeas corpus. From that time forward he is in the custody of the court issuing the writ  not the arresting authorities. That status is set forth in Barth v. Clise, 12 Wall. (U.S. 400, 20 L.Ed. 393 (1871)):
By the common law, upon the return of a writ of habeas corpus and the production of the body of the party suing it out, the authority under which the original commitment took place is superseded. After that time, and until the case is finally disposed of, the safekeeping of the prisoner is entirely under the control and direction of the court to which the return is made. The prisoner is detained, not under the original commitment, but under the authority of the writ of habeas corpus.
The principle was reaffirmed in Stallings v. Splain, 253 U.S. 339, 342, 40 S.Ct. 537, 64 L.Ed. 940 (1920). In re Thompson, supra, 85 N.J. Eq. at 269. See N.J.S.A. 2A:67-26.
If the judge in the asylum state decides after the habeas corpus hearing that the arrest is invalid, the person is discharged from custody. If the extradition papers are in due form, if the person is determined to be the one sought by the demanding state, and if he was present in the demanding state at the time the crime was committed, *115 the United States Constitution mandates the immediate surrender to the demanding state.[1]
To recapitulate, the arrest of Sinacore on April 27, 1972 was pursuant to constitutionally mandated action by the New York executive power. When, the same day, he refused to waive extradition, demanded a hearing and the request was granted, that was equivalent to the return of a writ of habeas corpus. From that time and until the determination on July 6, 1972 of the propriety of his arrest he was in the custody of the New York court  not as the result of any action of New Jersey but as the result of his own action in seeking the writ. In re Thompson, supra 85 N.J. Eq. at 268. This court cannot give credit to him for time he spent in another state's jail as the result of that state's action which he requested.
The motion for 69 days additional credit is denied.
NOTES
[1] If, at that point, because of delay on the part of the demanding state, the accused languishes in continued custody for no good reason, he would be entitled to credit for such time. He ought not be penalized by the loss of presentence jail time for which he would ultimately be entitled because state inaction prevented that time from commencing. Cf. State v. Council, supra. That, however, is not the instant case.